ply to the present case. The master proposed to the crew to go on this enterprise, to which they agreed, and when they arrived at the wreck he selected such as he thought proper to engage in the immediate agency of transferring the cargo of the Centurion to the Frances Ellen. The libellant was as ready as the rest of the crew to embark in the enterprise; nor does it appear that he refused to perform any duty that was required of him. It was the choice of the master that he should remain on board the Frances Ellen, and if he had not, prudence, I presume, would have required that another man should.

It is alleged as a third objection to the libellant's maintaining this suit, that he "conducted himself on board the said Frances Ellen in a disorderly and disobedient manner, refusing to perform his duty, threatening to poison the crew, breaking and destroying property, and finally wholly refusing to return in said Frances Ellen, so that this respondent was compelled to discharge him on account of his misconduct as aforesaid These are, without doubt, grave charges, and if they could apply to affect the claim set up in this case, would deserve to be carefully considered. But none of this disorderly conduct is charged as having occurred while they were engaged in the business of the salvage. Now without adverting to the insufficiency of the proof with respect to most of the charges, my opinion is, that the misconduct of the libellant in the course of the voyage, if proved, cannot be resorted to as a reason for forfeiting his claim for salvage, when no misconduct is proved during the time they were employed in this service. This was an enterprise apart from the voyage for which he shipped, and his previous offences, although they might affect his claim for wages, cannot be imported into this new and distinct enterprise, though springing up in the course of the voyage, to impair his claim for a share in the reward.

Upon the whole I can see no legal ground upon which the libellant can be excluded from the claim set up in this libel; no evidence has been introduced which goes to distinguish the merits of one man from another. The service does not appear to have been attended with any peculiar danger, nor to have afforded occasion for the display of extraordinary gallantry. The libellant remained on board the Frances Ellen. This was of course by order of the master. No evidence is offered to show that, during the period employed in saving the wreck and bringing her into port, he declined any duty which was required of him. As I see no reason for making a distinction between this man and the rest of the crew, I shall allow him the same sum which the master allowed to the others with costs.

Decree of seventeen dollars and costs.

C. E. PAGE, The. See Case No. 13,540.

## Case No. 2,555.

### The CERES.

[The case reported under above title in 7 Wkly. Notes Cas. 576, and 10 Cent. Law J. 113, is the same as Case No. 12,881.]

CERES, The. See Case No. 12,881.

CERES, The (SIMPSON v.). See Case No. 12,881.

## Case No. 2,556.

### In re CERF.

[11 N. B. R. 143;[1] 7 Chi. Leg. News (1874) 79.]

District Court, E. D. Texas.

DISCHARGE IN BANKRUPTCY.

A voluntary bankrupt whose assets are not equal to thirty per cent. of the claims proved against his estate, upon which he was liable as principal debtor, and who has not obtained the consent of one-fourth of his creditors in number and one-third in value, is not entitled to his discharge under the bankrupt act, as amended June 22, 1874 [18 Stat. 180].

[In bankruptcy. In the matter of Louis Cerf.]

MORRILL, District Judge. I have been requested to reconsider the decision heretofore made in this case, and accordingly have given it as much consideration as is consistent with other duties. The attorneys for the appellant admit that both the proceedings in bankruptcy and the debts of the bankrupt were subsequent to the 1st day of January, 1869, and previous to the 1st day of December, 1873, but insist that the clause in section 33 of the bankrupt act providing "that no discharge shall be granted to a debtor whose assets shall not be equal to fifty per cent. of the claims proved against his estate, unless the assent in writing of a majority in number and value of his creditors to whom he shall have become liable as a principal debtor, and who shall have proven their claims, be filed in the case, at or before the time of the hearing of the application for discharge," is repealed by the act of June 22, 1874, and that consequently the bankrupt is entitled to a discharge, without any regard to the amount of the assets.

The repealing clause relied upon is contained in the two last lines of the section 9 of the act, which is, "The provision in section 33 of said act of March 2, 1867 [14 Stat. 533], requiring fifty per cent. of such assets, is hereby repealed." We will take from the section what was expressly "hereby repealed," and the section would then read, "no discharge shall be granted to a debtor, * * * unless the consent in writing of a majority in number and value of his creditors, to whom he shall have become liable as principal debtor, and who shall have

---

[1] [Reprinted from 11 N. B. R. 143, by permission.]

proved their claims, be filed in the case, at or before the time of the hearing of the application for discharge." This would virtually limit and confine the bankrupt to the performance of one thing for a discharge instead of allowing the option of one of two things, as before. And, of course, the bankrupt could not be discharged unless he should obtain the required number of creditors, even if he had paid the fifty per cent. of his debts, or a larger amount. But this construction of the section 9 would be so obviously erroneous that it does not require a moment's consideration. It is evident that the repealing clause did not receive any more attention than is usually given to those passed at the close of the session in great haste.

The congress, in the passage of the section 9, intended to draw a distinction between a voluntary and an involuntary bankrupt. They further intended to make the conditions of obtaining a discharge of a voluntary bankrupt less onerous than they had previously been, and attach no conditions whatever, except as provided in the general act, and particularly section 29, to the discharge of an involuntary bankrupt. As it was in the power of congress to repeal any part or the whole of this bankrupt act, or so to change it as to make the conditions of obtaining a discharge of indebtedness more or less onerous, both as to future cases as well as to cases pending in the courts, and as section 9 of the act of June 22 was inconsistent with the section 33, and pro tanto a repeal thereof, the cause of the repealing clause in the last lines is not obvious. It is possible that it was thought by some that the judiciary might construe the amended act as applying only to causes thereafter to be instituted, and from abundant caution added the repealing clause.

I see no cause to change the opinion heretofore rendered, that inasmuch as the applicant is a voluntary bankrupt, and has not assets equal to thirty per cent. of the claims proved against his estate, upon which he was liable as principal debtor, and has not obtained the consent of one-fourth of his creditors in number and one-third in value—his application for a discharge is refused.

---

## Case No. 2,557.

### The CERRO GORDO.

### FRANKLIN v. The CERRO GORDO.

[6 Adm. Rec. 537.]

District Court, S. D. Florida. Dec. 24, 1862.

#### SALVAGE—COMPENSATION.

[Cited in Pent v. The Ocean Belle, Case No. 10,961.]

[In admiralty. Libel for salvage, by Thomas Franklin and others against the cargo and materials of the ship Cerro Gordo.]

Winer Bethel, for libellants.
S. J. Douglas, for respondent.

MARVIN, District Judge. This cause having been fully heard, and mature deliberation had, it is now ordered, adjudged and decreed, that the libellants composing the first general consortship have and recover in full compensation for their services rendered in saving said cargo, the one-quarter of the number of bales of dry and partly wet cotton, saved by them,—or one hundred and seventy-nine bales in all, that is one hundred and sixty-three bales of dry cotton and sixteen bales of cotton partially wet,—and that they also recover two hundred and two bales and two-fifths of a bale of the damaged or wet cotton saved by them, being two-fifths thereof,—to be set off to them by the clerk and marshal according to quality and weight.—That they also receive three hundred and seventy-two dollars and thirty-one cents, being the one-third of the proceeds of the materials and stores saved by them.—That the petitioners, the sloop Ratler, L. Burrows, Usquepang, Fairy and Hawkins receive two-fifths of the number of bales of cotton saved by them, weight and quality duly considered, and one-third of the proceeds of the materials saved by them.—And that the schooners Libie Sheppard, Relampago and E. Catherine, the Young America, and Jane Eliza receive one-half of the cotton saved by them, in full compensation for their services.—That the costs, expenses and charges, be charged to the residue of said cargo and materials and also the sum of $175 to be paid to the petitioners Michael McNamara and others for their services as by them alleged, and that the marshal advertize and sell so much of the residue of said cotton as may be sufficient to pay said sum, costs and charges, if said sale should become necessary.—That the marshal advertize and sell the cotton set off to the salvors, and that the proceeds be divided among them according to their consortships and the rule of this court, and that the marshal restore the residue of said cargo to the master of said ship for and on account of whom it may concern.

---

CERTAIN CASKS OF GLASSWARE (UNITED STATES v.). See Case No. 14,764.

CERTAIN CIGARS (UNITED STATES v.). See Case No. 14,765.

---

## Case No. 2,558.

### CERTAIN DISTILLED SPIRITS.

[Case cited as above in 2 Brightly, Fed. Dig. 379, is the same as Case No. 3,923.]

---

CERTAIN GOODS (JOHNSON v.). See Case No. 7,377.

CERTAIN HOGSHEADS OF MOLASSES (UNITED STATES v.). See Case No. 14,766.